IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 15, 2005 Session

EDWARD JOHNSON, ET AL. v. KATIE E. WILSON, ET AL.

Appeal from the Circuit Court for McMinn County
No. 22839     Lawrence H. Puckett, Judge

No. E2005-00523-COA-R3-CV  - FILED OCTOBER 31, 2005

This litigation arose out of an automobile accident.  The parties settled the plaintiffs' claims for $30,000; in due course, the defendants' insurance carrier paid the plaintiffs the full amount of the settlement.  Sometime after the payment had been made, the defendants moved the trial court to hold the plaintiffs and their attorney in contempt because of their failure to satisfy the lien of a third party and because of their failure to pay a $500 attorney's fee ordered by the trial court.  The trial court denied the motion.  The defendants appeal the trial court's action, but only with respect to the court's failure to hold the plaintiffs' attorney in contempt.  We affirm and hold that the defendants' appeal is frivolous in nature.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Larry B. Nolen, Athens, Tennessee, for the appellants, Katie E. Wilson and Sherrell Wilson.

C. Edward Daniel, Knoxville, Tennessee, for the appellees, Edward Johnson and wife, Glenda Johnson.

**OPINION**

I.

Edward Johnson and his wife, Glenda Johnson, filed suit against Katie E. Wilson and her father, Sherrell Wilson, seeking damages for injuries sustained in a 1998 automobile accident.  At the time of the accident, Mr. Johnson was employed by CSX Railroad.  By virtue of his employment, he was entitled to medical and disability benefits.  Pursuant to these entitlements, United Healthcare made payments for Mr. Johnson's medical expenses, and the United States Railroad Retirement Board ("the Board") advanced funds to him in the nature of disability benefits.  Liens were asserted

by each of the paying entities against any recovery by the plaintiffs against third party tortfeasors arising out of the accident.

The defendants' attorney, Larry B. Nolen ("the defendants' attorney"), was advised of the Board's lien by letter dated May 8, 1998.[1] The letter explained what the defendants needed to do to ensure that the Board's lien was satisfied. The Board cautioned the defendants' attorney

**not [to] entrust reimbursement of our lien to our claimant's attorney. If the attorney defaults in payment, you will still be liable to the [Board] for reimbursement.**

(Bold print in original).

In 2002, the defendants moved the trial court to dismiss the Johnsons' suit because of their failure to prosecute the action. The plaintiffs did not respond to the motion and failed to attend the hearing on the motion. The trial court dismissed the case and ordered the plaintiffs to pay the defendants' attorney "an attorney's fee of [$500], with costs taxed against the plaintiffs." Subsequently, the plaintiffs' current counsel, Mr. C. Edward Daniel ("the plaintiffs' attorney"), who was not the plaintiffs' original attorney in this matter, moved to set aside the order of dismissal. The plaintiffs' attorney argued, with supporting affidavits, that he did not receive a copy of the motion

---

[1] Authority for the lien is found in section 12(o) of the Railroad Unemployment Insurance Act, which provides as follows:

> Benefits payable to an employee with respect to days of sickness shall be payable regardless of the liability of any person to pay damages for such infirmity. The Board shall be entitled to reimbursement from any sum or damages paid or payable to such employee or other person through suit, compromise, settlement, judgment, or otherwise on account of any liability (other than a liability under a health, sickness, accident, or similar insurance policy) based upon such infirmity, to the extent that it will have paid or will pay benefits for days of sickness resulting from such infirmity. Upon notice to the person against whom such right or claim exists or is asserted, the Board shall have a lien upon such right or claim, any judgment obtained thereunder, and any sum or damages paid under such right or claim, to the extent of the amount to which the Board is entitled by way of reimbursement.

45 U.S.C.A. § 362(o) (1986).

and was not aware of the hearing at which it was granted. In an order filed May 20, 2002, the trial court set aside the order of dismissal, but reiterated that the defendants' attorney "shall be entitled to receive attorneys fees and costs of [$500.00] for his time expended in having to file the [motion to dismiss]."

Approximately one year later, the Johnsons and the Wilsons settled the pending suit. The defendants' casualty insurance carrier, Shelter Mutual Insurance Companies, agreed to pay the plaintiffs $30,000 in exchange for a release from any and all liability on claims arising out of the accident. The express language of the parties' agreement requires that the plaintiffs "[be] solely responsible for payment of the claim of United Healthcare (Railroad Employees) for medical expenses [] incurred as a result of this accident, and shall indemnify defendants and SHELTER MUTUAL INSURANCE COMPANIES and hold them harmless of any and all claims and liens." (Capitalization in original). Shortly thereafter, the plaintiffs paid the lien claim of United Healthcare in full.

The trial court's June 19, 2003, order of dismissal recited the plaintiffs' obligation to pay United Healthcare's lien and further provided "that all matters in controversy herein between [the parties] have been compromised and settled," and the complaint was "dismissed with full prejudice." The Board's lien and the order for the $500 attorney's fee were not expressly mentioned in either the parties' settlement agreement or the trial court's 2003 order of dismissal. Shortly after the disbursement of the settlement proceeds, the plaintiffs filed for protection under the United States Bankruptcy Code.[2]

In November, 2003, more than five months after settlement and dismissal of the case, the defendants' attorney advised the plaintiffs' attorney of the Board's lien and the Board's contention that the defendants and Shelter Mutual Insurance Companies were still liable for payment of its lien. The defendants' attorney requested that the plaintiffs satisfy the Board's lien and the previously-ordered fee of $500. The plaintiffs' attorney responded by denying that the plaintiffs were still responsible for payment of the $500 fee. He advised the defendants' attorney that it was unlikely that the plaintiffs would pay the Board's lien claim due to the plaintiffs' filing for bankruptcy.

In a letter to the Board, the defendants' attorney acknowledged the defendants' statutory responsibility for the payment of the Board's lien, but advised the Board that he intended to pursue collection of the Board's claim from the plaintiffs. Thereafter, the defendants filed the motion in the trial court seeking an order of the court directing the plaintiffs *and their attorney* to show cause why they should not be held in contempt. The defendants argued that the plaintiffs' failure to pay the Board's lien and the earlier-ordered $500 fee were each contemptuous acts. The trial court denied the defendants' motion as to the plaintiffs and the plaintiffs' attorney. The defendants appeal,

_____

[2] There is some dispute as to whether the plaintiffs properly listed the Board and the defendants' attorney as creditors in their bankruptcy petition. Given the issues at hand and the scope of our review, we do not find it necessary to delve into this matter.

arguing that the trial court erred as to its ruling with respect to the plaintiffs' attorney. We hold that the defendants request for relief against the plaintiffs' attorney is utterly without merit.

## II.

We review a trial court's decision on the subject of contempt pursuant to an abuse of discretion standard. *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993). "The matter of determining and dealing with contempts is within the court's sound discretion,. . . and its determination is final unless there is plain abuse of discretion." *Robinson v. Air Draulics Eng'r Co.*, 377 S.W.2d 908, 912 (Tenn. 1964) (citing 17 C.J.S. *Contempt* § 57). We will only find an abuse of discretion when the trial court's decision is against logic or reasoning and causes an injustice or injury to the party complaining. *Marcus v. Marcus*, 993 S.W.2d 596, 601 (Tenn. 1999) (quoting *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)).

Tennessee courts have the inherent authority and discretion to punish for acts of contempt. *Reed v. Hamilton*, 39 S.W.3d 115, 117 (Tenn. Ct. App. 2000). However, a court's authority to hold a party in contempt is limited to the conduct described in Tenn. Code Ann. § 29-9-102 (2000). *See Black v. Blount*, 938 S.W.2d 394, 397-98 (Tenn. 1996); *State v. Turner*, 914 S.W.2d 951, 955 (Tenn. Crim. App. 1995). Among the conduct which courts have the authority to punish as contempt is "[t]he willful disobedience or resistance of any officer of the said courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts." Tenn. Code Ann. § 29-9-102(3).

The language of Tenn. Code Ann. § 29-9-102(3) is unambiguous. Two elements are required for a finding of contempt: (1) willful disobedience or resistance, and (2) a lawful writ, process, order, rule, decree, or command of a court of this State. Tenn. Code Ann. § 29-9-102(3); *State v. Winningham*, 958 S.W.2d 740, 745 (Tenn. 1997). A court order specifically mandating or prohibiting the alleged contemptuous conduct is essential. *See Overnite Transp. Co. v. Teamsters Local Union No. 480*, ---S.W.3d---, 2005 WL 1342680, at *3 (Tenn., filed June 8, 2005) ("One may violate a court's order by either refusing to perform an act *mandated by the order* or performing an act *forbidden by the order*.") (emphasis added).

## III.

We first consider whether the trial court abused its discretion when it determined that the failure of the plaintiffs' attorney to pay the Board's lien was not punishable as contempt. The defendants specifically contend that the plaintiffs' attorney violated the June 19, 2003, order of dismissal by not setting aside a portion of the settlement proceeds to satisfy the Board's lien. We disagree. The settlement agreement states that the plaintiffs are "solely responsible for payment of the claim of United Healthcare (Railroad Employees) for medical expenses [] incurred as a result of this accident, and shall indemnify defendants and SHELTER MUTUAL INSURANCE COMPANIES and hold them harmless of any and all claims and liens." (Capitalization in original).

There is no question but that this order expressly mandated the *plaintiffs* to reimburse *United Healthcare* for its payment of Edward Johnson's medical bills. As noted earlier, the plaintiffs satisfied this obligation in full.

The defendants acknowledge that the first part of the June 19, 2003, order only pertains to United Healthcare; but they contend that the broad language in the latter part of the order – "hold them harmless of *any and all claims and liens*" – should be construed to include not only United Healthcare but also the claim and lien of the Board. (Emphasis added). The defendants also argue that "[i]t is logical and reasonable to conclude that if plaintiffs had paid one lien [*i.e.,* United Healthcare's lien] then it would necessarily follow that plaintiffs would also be responsible for all other liens [*i.e.,* the Board's lien]." These arguments and contentions may or may not have merit; but they have no bearing on the issue before us. On this appeal, the plaintiffs were not obligated to address their possible liability with respect to the Board's lien. This is because the only issue before us, regarding the Board's lien, is whether the failure *of the plaintiffs' attorney* to pay the lien is a violation of a trial court's order. We find no court order in the record directing the plaintiffs' attorney to pay, or set aside proceeds for, the Board's lien. Thus, the trial court did not abuse its discretion in determining that the plaintiffs' attorney did not willfully disobey a court order in failing to see to the payment of the Board's lien claim.

The defendants also ask us to hold that the trial court abused its discretion in refusing to find the plaintiffs' attorney in contempt for failing to pay the defendants' attorney the previously-ordered $500 fee. The plaintiffs' attorney acknowledges the existence of the trial court's 2002 order affirming and requiring the payment of the fee. However, the plaintiffs' attorney asserts that the order of dismissal, which was filed approximately one year after the trial court reaffirmed its award of the $500 fee, released and resolved the issue by stating that all "matters in controversy" were "compromised and settled." In ruling on the $500 fee issue in the hearing that led to the instant appeal, the trial court refused "to go behind [the 2003 order of dismissal]" to find facts supporting a holding that the plaintiffs and the plaintiffs' attorney were in contempt. We hold that, regardless of whether the settlement was intended to resolve and compromise the $500 fee, *it was the plaintiffs, and not the plaintiffs' attorney*, who were ordered to pay the fee. The plaintiffs' attorney cannot be held in contempt of court where there is no order requiring him, *individually*, to pay the fee or directing him to withhold funds from the settlement funds for this purpose.

## IV.

The trial court clearly did not abuse its discretion with respect to the claimed responsibility of the plaintiffs' attorney for the Board's lien or the $500 fee.

## V.

The plaintiffs raise the issue of whether the defendants should be liable for damages for bringing a frivolous appeal. Tenn. Code Ann. § 27-1-122 (2000) provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

*Id.* This statute "must be interpreted and applied strictly so as not to discourage legitimate appeals." ***Davis v. Gulf Ins. Group***, 546 S.W.2d 583, 586 (Tenn. 1977) (discussing the predecessor of Tenn. Code Ann.§ 27-1-122). An appeal is deemed frivolous if it is devoid of merit or if it has no reasonable chance of success. ***Bursack v. Wilson***, 982 S.W.2d 341, 345 (Tenn. Ct. App. 1998); ***Indus. Dev. Bd. v. Hancock***, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995).

We find this appeal so devoid of merit and so lacking in any reasonable chance of success as to warrant its characterization as frivolous. The defendants' contempt allegations against the plaintiffs' attorney are baseless. One simply cannot be guilty of contempt of court for violating an order which is not directed at the party sought to be held in contempt.

## VI.

The judgment of the trial court is affirmed. The case is remanded for a hearing in the trial court to determine the plaintiffs' damages pursuant to Tenn. Code Ann. § 27-1-122. Costs on appeal are taxed against the appellants, Katie E. Wilson and Sherrell Wilson.

_____

CHARLES D. SUSANO, JR., JUDGE